

FILED
2017 Feb-22  PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | |
|---|---|
| JUDY KAY BONHAM, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  6:15-cv-00616-HGD |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Judy Kay Bonham seeks judicial review, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI).  (Doc. 1).  Plaintiff timely pursued and exhausted her administrative remedies.  The case is, therefore, ripe for review under 42 U.S.C. §§ 405(g) and 1383(c).  The parties filed written consent for the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (Doc. 9). Upon careful consideration of the administrative record and the memoranda of the

parties, and for the reasons stated below, the Court finds that the decision of the Commissioner is due to REVERSED and REMANDED for further consideration consistent with this opinion.

## I.    Factual and Procedural History

Plaintiff was 51 years old on December 10, 2010, her alleged onset date, 52 on her date last insured, and 53 when the ALJ issued his decision.  (*See* Tr. 7, 10, 68). Plaintiff has a limited education, and her past relevant work experience is as a day worker or housekeeper, which is medium, unskilled work.  (Tr. 21, 37, 58-59, 211).

Plaintiff filed an application for a period of disability and DIB on February 13, 2012, and an application for SSI on February 23, 2012.  (Tr. 151, 153).  In both applications, plaintiff alleged disability beginning December 1, 2010.  (*Id.*).  These applications were initially denied on June 1, 2012.  (Tr. 96, 101).  Plaintiff requested a hearing before an administrative law judge (ALJ), and a video hearing was held before Hon. Patrick R. Digby on May 1, 2013.  (Tr. 109, 119-120).  The ALJ denied disability benefits to plaintiff on August 9, 2013, finding the plaintiff was not disabled under the Social Security Act.  (Tr. 7,  10).  The Appeals Council denied plaintiff's request for review on February 20, 2015, and the ALJ's decision became the final decision of the Commissioner.  (Tr. 1).  Plaintiff then timely initiated this action.

## II.    Standard of Review

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence, and this court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). The ALJ's decision is supported by substantial evidence if it is based on "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed "[e]ven if the evidence preponderates against the Commissioner's findings. . . ." *Id.* (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). The ALJ's legal conclusions, however, are reviewed *de novo* "because no presumption of validity attaches to the [ALJ's] determination of the proper legal standards to be applied." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).

While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, the ALJ's decision must be reversed. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. Statutory and Regulatory Framework

To qualify for disability benefits and establish entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated under the Act. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To establish entitlement to disability benefits, a claimant must provide evidence of a physical or mental impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.[1]   20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* At the third step, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the final two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which is the most a claimant can still do despite her impairments. 20 C.F.R. § 404.1545(a)(1). Then, in the fourth step, the ALJ determines whether the

---

[1] "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit.

claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).

If the claimant is determined to be capable of performing past relevant work, then the

claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to

perform past relevant work, then the analysis proceeds to the fifth and final step.  20

C.F.R. § 404.1520(a)(4)(v).   In this step, the ALJ must determine whether the

claimant is able to perform any other work commensurate with her RFC, age,

education and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof

shifts from the claimant to the ALJ to prove the existence in significant numbers of

jobs in the national economy that the claimant can do given her RFC, age, education

and work experience.  20 C.F.R. §§ 404.1520(g) and 404.1560(c).

## IV.   Findings of the Administrative Law Judge

At step one, the ALJ first found that plaintiff has not engaged in substantial

gainful activity since December 10, 2010, the alleged onset date.  (Tr. 12).  At step

two, the ALJ found that plaintiff has the following severe impairments:  status post

fusion at C6-C8, status post right knee arthroscopy, status post right rotator cuff

repair, and status post right carpal metacarpal.  (*Id.*).  At step three, the ALJ found

that plaintiff's condition did not meet or medically equal the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 13).

Before proceeding to step four, the ALJ found, based on the entire record, that plaintiff has the RFC to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 415.967(b); that she can occasionally lift and carry 25 pounds and frequently lift and carry ten pounds; that she can stand, walk, and sit six hours in an eight-hour day; that she can frequently climb ramps and stairs, and frequently balance, stoop, kneel, crouch, and crawl; that she cannot climb ropes, ladders, and scaffolds; and that she should avoid all exposure to unprotected heights and dangerous machinery. (Tr. 14).

At step four, the ALJ found that plaintiff is unable to perform any past relevant work. (Tr. 21). Based on plaintiff's age, work experience and RFC, and the testimony of a vocational expert (VE), the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including the representative occupations of housekeeper/cleaner, cashier, and sales attendant. (Tr. 22). Therefore, the ALJ concluded that plaintiff is not disabled as defined by the Social Security Act, and he denied plaintiff's claims. (Tr. 22).

## V.   Analysis

The court must review the Commissioner's decision and determine whether it is supported by substantial evidence and whether the correct legal standards were

applied.  Plaintiff argues the Commissioner's decision must be reversed because it is not supported by substantial evidence and because the ALJ committed reversible legal error.  Specifically, plaintiff challenges the Commissioner's decision by arguing the ALJ failed to properly consider plaintiff's subjective complaints of pain and other symptoms and failed to properly accord weight to the medical evidence; therefore, the ALJ's determination of plaintiff's RFC is not supported by substantial evidence. (Doc. 10 at 4-15).

> A.   The ALJ's determination regarding plaintiff's subjective complaints of pain is supported by substantial evidence.

Plaintiff first argues the ALJ decision must be reversed because he failed to properly consider her testimony regarding her subjective complaints of pain and other symptoms.  (Doc. 10 at 4-8).  The court disagrees.

"In order to establish a disability based on testimony of pain and other symptoms, [a] claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If the plaintiff's testimony

satisfies this standard, the ALJ may still discredit the testimony, but he "must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Moreover, the reasons articulated by the ALJ must be supported by substantial evidence. *See Wilson*, 284 F.3d at 1225; *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). "Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citation omitted).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, a claimant's prior work record, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4).

At the administrative hearing in this matter, plaintiff testified she stopped working on December 1, 2010, because she "hurt all the time" and "just got to where [she] couldn't do it anymore." (Tr. 37). Plaintiff testified that sitting intensifies her pain, and 15-20 minutes is the longest amount of time she could sit in a chair before needing to stand up. (Tr. 41, 43). Additionally, plaintiff testified that she has

difficulty walking and can only walk for five to ten minutes before she has to sit down. (Tr. 51). Finally, plaintiff testified she could only stand in one place for ten minutes, and she testified that she could only stand or walk for a total of three hours off and on during an eight-hour day. (Tr. 51-52).

The ALJ properly evaluated plaintiff's subjective complaints of pain and other symptoms. (See Tr. 14-21). Citing the appropriate standard and authority (Tr. 14-15), the ALJ determined plaintiff's underlying medical condition "could reasonably be expected to cause some of the alleged symptoms; however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 15).

Substantial evidence supports the ALJ's finding that plaintiff's subjective testimony regarding her pain and other symptoms was not entirely credible. Indeed, as the ALJ noted, the medical records repeatedly show that the plaintiff was "well developed, well nourished, and in no acute distress." (Tr. 18, 443, 607, 613).

In regard to plaintiff's neck pain, an MRI of plaintiff's cervical spine in May 2007 revealed degenerative changes at C5-6 with a small central disc protrusion with mild impingement on the ventral thecal sac. (Tr. 15, 233). Plaintiff had surgery on her neck in 2007, and x-rays in August 2010 showed her cervical fusion was intact.

(Tr. 235, 327).  Plaintiff saw Michael Kendrick, M.D., a pain management specialist, from January 2011 to January 2013. Dr. Kendrick diagnosed her with postlaminectomy syndrome in the cervical region, but upon examination, he also noted plaintiff had only mild tenderness with palpation in her cervical spine and only mild decrease in flexion and extension. (Tr. 16, 120).  Additionally, plaintiff reported to Dr. Kendrick that her medication provided some relief of pain, and Dr. Kendrick found no weakness, swelling, instability, warmth or redness.  (Tr. 16, 18, 381, 393, 407, 410, 612, 625).  In May 2012, William May, M.D., a consultative medical examiner, examined plaintiff and found that she had only slightly diminished flexion and extension of the cervical spine.  (Tr. 18, 444).

In regard to plaintiff's back pain, plaintiff saw Gary N. Russell, M.D., an orthopedist, in July 2010 with complaints of low back pain and right shoulder pain, and an x-ray at that time revealed "[j]ust a touch of facet arthropathy in the low back." (Tr. 15, 239).  Plaintiff was tender over the left sacroiliac joint and over the posterior iliac spine on the right, and she received a sacroiliac injection that she tolerated well. (*Id.*).  Plaintiff went to urgent care in October 2011 with complaints of back pain; a physical exam at that time showed no decrease in her range of motion, and an x-ray of her back was normal.  (Tr. 17, 18, 533).  Upon examination in May 2012, Dr. May

observed that there was no decreased range of motion in plaintiff's back and straight leg raising examination was unremarkable. (Tr. 18, 444).

In regard to plaintiff's shoulder pain, Dr. Russell diagnosed plaintiff with right shoulder subacromial impingement and rotator cuff tendonitis on July 14, 2010, and plaintiff underwent surgery for right shoulder rotator cuff subacromial decompression labral debridement in July 2010. (Tr. 239). In September 2010, Dr. Russell noted that plaintiff's right shoulder showed no significant abnormalities, and plaintiff had "forward flexion to 90 degrees and good rotator cuff function and deltoid function." (Tr. 15, 237). At her consultative exam in May 2012, Dr. May observed that her range of motion was normal in both shoulders and her right shoulder had only slightly diminished strength. (Tr. 18, 444).

Finally, in regard to plaintiff's knee pain, plaintiff complained of left knee pain in October 2009, and records from Dr. Russell show plaintiff had "some mechanical symptomatology" and "a little bit of swelling on the right." (Tr. 240). Plaintiff received an injection for left knee internal derangement on October 15, 2009, and Dr. Russell instructed her to undergo an MRI of the left knee. (Tr. 15, 240). However, there is no record of an MRI at that time, and Dr. Russell did not see plaintiff again until July 2010, when she had pain in her low back and right shoulder. (*See* Tr. 15). Dr. Russell diagnosed plaintiff with left knee internal derangement with meniscal tear

on August 25, 2010, and plaintiff received another injection.  (Tr. 15, 238).  On February 1, 2012, an MRI of plaintiff's right knee revealed a large horizontal tear of right medial meniscal body and a ruptured Baker's cyst.  (Tr. 16, 433).  Robert Sorrell, M.D., an orthopedic surgeon, performed an arthroscopy on plaintiff's right knee, with partial lateral and medial meniscectomy, on February 20, 2012, and plaintiff reported that she was doing much better at her follow-up appointment with Dr. Sorrell.  (Tr. 16, 18, 436-37).  In May 2012, Dr. May noted plaintiff's range of motion in her knees was normal.  (Tr. 18, 444).  Finally, in October 2012, x-rays of her knee were normal.  (Tr. 18, 437).

Based on the foregoing, objective medical evidence supports the ALJ's determination that plaintiff's testimony regarding her pain and other symptoms was not entirely credible.  In addition, the ALJ properly considered evidence of plaintiff's activities of daily living and her prior work activity in evaluating the credibility of plaintiff's testimony regarding her subjective pain.  (Tr. 18-19).  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).   Plaintiff testified she is able to help with housework and laundry, drive, and shop for groceries.  (Tr. 35-36).  Plaintiff also reported that she sometimes cooks dinner.  (Tr. 182).  Additionally, plaintiff reported to Dr. May in May 2012 that she "performed most household chores including sweeping, mopping, vacuuming, cooking, and doing the dishes."  (Tr. 442).  The ALJ

found "these activities are inconsistent with [plaintiff's] allegations of disabling pain and dysfunction." (Tr. 19). The ALJ also found that plaintiff's prior work history, which showed plaintiff had not worked at substantial gainful activity levels at times prior to her alleged onset date, also diminished the credibility of her allegation of disability. (*Id.*).

Plaintiff argues the ALJ mischaracterizes the medical evidence in the record and, therefore, his credibility determination and finding regarding plaintiff's subjective complaints of pain is not supported by substantial evidence. (Doc. 10 at 5). First, plaintiff asserts that, contrary to the ALJ's statement otherwise, she did not admit to being able to lift 25 pounds.[2] (Doc. 10 at 6; *see also* Tr. 19). Although plaintiff testified at the hearing that she could lift no more than five or ten pounds, in plaintiff's function report dated March 29, 2012, she admitted to being able to lift 25 pounds, and Dr. May's report dated May 12, 2012, states that plaintiff reported that "she can lift approximately 25 pounds." (Tr. 47, 187, 442). Additionally, the third-party function report submitted by plaintiff's cousin states that plaintiff can lift

---

[2] Plaintiff also argues the ALJ mischaracterized the medical evidence when he stated that he found that "not one of the medical sources of record has offered an opinion that the claimant has limitations greater than those stated in the above residual functional capacity," and she argues the ALJ's determination of her RFC is contrary to Dr. May's opinion. (Doc. 10 at 5-6 (citing Tr. 20)). This argument goes to the issue of whether the ALJ's determination of plaintiff's RFC is supported by substantial evidence. It does not impact the court's analysis of whether the ALJ properly considered plaintiff's subjective complaints of pain, and the court does not address it in its consideration of whether the ALJ's finding that plaintiff's subjective complaints of pain were not entirely credible is supported by substantial evidence.

25 pounds.  (Tr. 200).  Thus, the ALJ correctly noted that plaintiff admitted to being able to lift 25 pounds, and substantial evidence supports the ALJ's decision to discredit plaintiff's testimony that she could lift no more than five or ten pounds.

Plaintiff also argues the ALJ incorrectly stated that "[n]o physician has recommended any additional surgery" for plaintiff's impairments.  (Doc. 10 (citing Tr. 18)).  However, plaintiff does not cite to any record in which a physician explicitly recommended additional surgery.  Rather, plaintiff cites Dr. Sorrell's conditional statements that arthroscopic surgery on plaintiff's knee and shoulder may be needed if the treatment with injections did not work.[3]  (Tr. 586-88).  As a result, the record does not show that any physician actually recommended additional surgery or that the ALJ's statement was incorrect.

Finally, plaintiff argues that the ALJ incorrectly found that "[t]he course of medical treatment in this case is not consistent with disabling levels of pain."  (Doc. 10 at 7 (citing Tr. 18)).  The ALJ correctly noted that plaintiff has not "required emergency treatment or inpatient hospitalizations for treatment of her impairment."[4]  (Tr. 18).  The ALJ also noted that plaintiff's prescriptions for pain medications weigh

---

[3] In one record cited by plaintiff, Dr. Sorrell stated that he does not "think that surgery will help . . . ."  (Tr. 586).

[4] The record reflects that plaintiff has sought emergency treatment and been hospitalized for conditions that were not related to her current impairments.  (See Tr. 291-337, 347-54, 365-77).

in her favor, but he went on to find that the "medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms." (Tr. 18). Medical evidence supports the ALJ's finding. (Tr. 393, 400, 407, 612, 625). Additionally, plaintiff did not dispute the ALJ's statement that "the record shows improvement in [plaintiff's] symptoms following steroid injections," and the record supports the ALJ's statement. (Tr. 18, 241, 420, 587, 594; *see* Doc. 10 at 4-8). Thus, substantial evidence supports the ALJ's finding that plaintiff's course of treatment was not consistent with disabling levels of pain.

Based on the foregoing, the court concludes that substantial evidence supports the ALJ's determination that plaintiff's testimony regarding her pain and other symptoms was not entirely credible. The ALJ properly considered the relevant evidence in assessing the credibility of plaintiff's allegations and clearly articulated his finding and the supporting evidence. This finding will not be disturbed.

B.    The ALJ did not properly weigh all of the medical opinion evidence.

Plaintiff next argues that she is entitled to relief from the ALJ's decision because the ALJ did not properly weigh the opinions of Michael Scott Kendrick, M.D., one of plaintiff's treating physicians, William May, M.D., an examining physician, and Lee Blackmon, M.D., a non-examining physician. (Doc. 10 at 8-14). As discussed below, the court finds the ALJ committed reversible error by failing to

articulate reasons for not giving weight to some of Dr. Kendrick's opinions and also erred by giving weight to the assessment of a single decision-maker.

An ALJ is required to consider every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairment(s), including the claimant's symptoms, diagnosis and prognosis, what the claimant can still do despite impairment(s) and the claimant's physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)) (alterations omitted). A claimant's medical records may contain medical opinion evidence. The Eleventh Circuit has recognized that a physician's treatment notes containing "a description of [the claimant's] symptoms, a diagnosis, and a judgment about the severity of his impairments" are a medical opinion. *Id.* at 1179 (quotation omitted).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* at 1179; *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*) (citation omitted). In the absence of sufficient particularity, the Court "cannot determine whether substantial evidence supports the ALJ's decision . . . ." *Denomme v. Comm'r of Soc. Sec.*, 518 Fed.Appx. 875, 877

(11th Cir. 2013) (citing *Winschel*, 631 F.3d at 1179). "'[T]here is no rigid requirement,' however, 'that the ALJ specifically refer to every piece of evidence in his [or her] decision,' so long as the decision is not 'a broad rejection' that leaves the district court or this Court with insufficient information to conclude whether the administrative law judge considered the claimant's medical condition as a whole." *Hunter v. Comm'r of Soc. Sec.*, 609 Fed.Appx. 555, 557-58 (11th Cir. 2015) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

An examining physician's opinion typically receives more weight than an opinion of a non-examining physician, though the ALJ owes no deference to the opinion of a one-time examining physician. *See Eyre v. Comm'r of Soc. Sec.*, 586 Fed.Appx. 521, 523 (11th Cir. 2014) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). In addition, the Eleventh Circuit has "held that the medical opinions of a treating physician must be given 'substantial or considerable weight' unless 'good cause' is shown to the contrary." *Hunter*, 609 Fed.Appx. at 557 (citing *Winschel*, 631 F.3d at 1179). The Eleventh Circuit has also "found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, [ ] where the evidence supported a contrary finding[, or] where the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted). "The ALJ must clearly

articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Id.*; *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) ("The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and the failure to do so is reversible error.") (quotation omitted).

### 1.   *Dr. Kendrick's Opinion Evidence*

Plaintiff first argues the ALJ committed reversible error by failing to state the weight given to the opinions of Dr. Kendrick, plaintiff's pain management treating physician, who saw plaintiff more than a dozen times from January 2011 until January 2013.  (Doc. 10 at 8).  The ALJ summarized the medical records from plaintiff's treating physicians, including the records from Dr. Kendrick,[5] and stated he "considered the medical source opinion to be a major factor in assessing [plaintiff's] limitations and in evaluating the credibility of her subjective complaints." (Tr. 15-20).  Although the ALJ did not use the terms "substantial or considerable weight," the ALJ's statement that the medical opinions were "a major factor" in

---

[5] Plaintiff takes issue with the ALJ's treatment of Dr. Kendrick's opinions in part because the ALJ summarized the records from Dr. Kendrick in two separate paragraphs in his decision and did not mention Dr. Kendrick by name when summarizing the records from Southside Pain Specialists, the clinic where Dr. Kendrick practices.  (Doc. 10 at 8-9; Tr. 16, 18 (citing Exhs. 5F & 16F)).  However, the ALJ did not err by separately summarizing the records produced by Dr. Kendrick and the records produced by his clinic, nor did the ALJ err by not referring to Dr. Kendrick by name when summarizing the records produced by his clinic.  *See Hunter*, 609 Fed.Appx. at 558 (finding it was not reversible error for an ALJ to not specifically identify the claimant's treating physician when summarizing medical records).

determining plaintiff's limitations indicates the ALJ gave considerable weight to the opinions of plaintiff's treating physicians.  Even so, the ALJ did not expressly accept or reject all of Dr. Kendrick's opinions.

The ALJ did not reference Dr. Kendrick's physical exam notes reflecting that plaintiff's symptoms include an antalgic gait[6] and appropriate pain-related behaviors in his summary of the medical records.  (Tr. 16, 18, 382, 387, 393, 400, 408, 411, 420, 600, 607, 613, 619, 626, 633).  Plaintiff objects to the ALJ's failure to specify the weight given to those opinions.[7]  (*See* Doc. 10 at 9).  On the other hand, the Commissioner argues Dr. Kendrick's notes regarding plaintiff's antalgic gait and appropriate pain-related behaviors are observations rather than opinions.  (Doc. 11

---

[6] An antalgic gait is defined as "a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase."  ANTALGIC GAIT, http://medical-dictionary.thefreedictionary.com/antalgic+gait.

[7] Plaintiff also objects to the ALJ's failure to specify the weight given to notes in Dr. Kendrick's records listing "sitting, standing, walking, cold weather, damp weather, and driving" as aggravating factors.  (Doc. 10 at 9).  The aggravating factors listed in the records were self-reported by plaintiff.  (See Tr. 381, 386, 392, 399, 407, 410, 418-19, 599, 606, 612, 618, 625, 632).  Therefore, the statements in the records identifying aggravating factors do not reflect Dr. Kendrick's judgments regarding plaintiff's impairments, and they are not medical opinions.  *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

Additionally, in her reply brief plaintiff argues the ALJ implicitly rejected Dr. Kendrick's opinion that she suffers from post laminectomy syndrome by not finding at step two that post laminectomy syndrome is one of plaintiff's severe impairments.  (Doc. 12 at 5-6).  Because this argument was raised for the first time on appeal and the Commissioner did not have a chance to respond, the court does not address it.  *See Buttram v. Comm'r of Soc. Sec.*, 594 Fed.Appx. 569, 572 (11th Cir. 2014) (noting the court will decline to consider arguments raised for the first time in reply briefs and that "this rule applies with equal force in social security appeals").

at 16).   The notes at issue reflect Dr. Kendrick's judgment about the nature of plaintiff's symptoms, specifically that plaintiff limps to avoid pain on her weight-bearing structures and shows appropriate pain-related behaviors.   Therefore, Dr. Kendrick's notes qualify as medical opinion evidence from a treating physician, and are entitled to considerable or substantial weight "unless good cause is shown to the contrary."   *Hunter*, 609 Fed.Appx. at 557 (quotation and quotation marks omitted); *Winschel*, 631 F.3d at 1179 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

Here, the ALJ did not include Dr. Kendrick's statements that plaintiff had an antalgic gait and showed appropriate pain-related behavior in his summary of Dr. Kendrick's medical records.  (Tr. 16, 18).  Thus, it appears the ALJ rejected those elements of Dr. Kendrick's opinion and gave them no weight in his formulation of plaintiff's RFC.  Although an ALJ does not have to cite every piece of evidence in his decision, "the ALJ has a duty to develop the record fully and fairly."  *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (*per curiam*) (citation omitted). Moreover, an ALJ's failure to articulate his reasons for giving less than substantial or considerable weight to a treating physician's opinion is reversible error.  *Lewis*, 125 F.3d at 1440 (citation omitted).

The Commissioner argues that even if the ALJ erred by not explicitly assigning weight to every part of Dr. Kendrick's opinion, "any such error was harmless because it did not affect the ALJ's decision or the outcome of the case." (Doc. 11 at 17). However, without a statement from the ALJ showing that he considered and rejected Dr. Kendrick's opinion that plaintiff's symptoms include an antalgic gait and appropriate pain related behaviors, the court is unable to determine if the ALJ considered plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211. In addition, because the ALJ did not state any reason for rejecting part of Dr. Kendrick's opinion, the court cannot determine whether his reason for doing so was supported by substantial evidence. Accordingly, the ALJ's decision is due to be reversed and remanded for further consideration consistent with this opinion. *See Winschel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected [the treating physician's medical opinion], but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."). On remand, the ALJ shall specify the weight given to Dr. Kendrick's opinion and, if necessary, any reason for rejecting part or all of the opinion.

2.    *Dr. May's Opinion Evidence*

Plaintiff next argues the ALJ failed to properly weigh the opinion evidence of

Dr. May, a consultative examiner who conducted a physical examination of plaintiff

on May 12, 2012.  (Doc. 10 at 9-11).  The ALJ considered Dr. May's opinion and

summarized Dr. May's findings in his decision.  (Tr. 16-17).  From his examination,

Dr. May observed:

> [Plaintiff] was in no acute distress at the time of examination.  She
> ambulates normally without assistive device.  She is able to get on and
> off the examination table and up and out of the chair.  [ . . . ] She is able
> to manipulate smaller object[s] such as button[s], zippers, as well as
> pens.  She is able to ambulate on heels and toes.  She is able to
> heel-to-toe ambulate.  She was able to squat and rise.
>
> Range of motion was normal in both shoulders . . . .  However, she has
> diminished flexion of the cervical spine in approximately 40 degrees.
> She has diminished extension of the cervical spine at approximately 50
> degrees.  She has normal lateral flexion of the cervical spine.  She has
> diminished rotation of cervical spine approximately 60 degrees both the
> right and left.  Lumbar spine flexion was normal.  Hip and knee range
> of motion was all normal.  Straight leg raise examination was performed
> and was unremarkable.

(Tr. 443-44).  Based on his examination, Dr. May reported the following overall

impression regarding plaintiff's impairments:

> [Plaintiff] is a 52-year old Caucasian female with complaints of
> generalized arthritis in virtually all joints.  She does not actually have
> any deformities related to her arthritis.  She is somewhat tender to
> palpation at posterior aspect of both knees and may have slight edema
> around both knees.  Her range of motion is slightly diminished in her
> cervical spine as mentioned.  . . .  She is able to perform most activities

of daily living and is able to care for herself.  I would estimate that she may have difficulties with forms of employment that involve significant exertion and ambulation as well as lifting and bending; however, she could perform mild forms of employment.

(Tr. 445).

The ALJ accorded the objective findings in Dr. May's opinion substantial weight and accorded Dr. May's "opinion regarding employment" only "some weight" because it is "a vocational statement and the final determination of work is reserved to the commissioner." (Tr. 20).  Plaintiff argues Dr. May's opinion that plaintiff "may have difficulties with some forms of employment that involve significant exertion and ambulation as well as lifting and bending" is a medical opinion and the ALJ erred by giving only "some weight."  (Doc. 10 at 10).  Specifically, plaintiff asserts the opinion at issue is a medical opinion because it outlines Dr. May's medical judgment about her physical restrictions, is not dispositive of the case, and does not relate to the application of vocational factors.  (*Id.* at 10-11).

Plaintiff's argument misses the mark, however, because determining a claimant's RFC and ability to work are issues for the ALJ to decide.  20 C.F.R. § 404.1527(d); *Robinson v. Astrue*, 365 Fed.Appx. 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").  Accordingly, the ALJ is not required to give weight to a physician's opinion regarding a claimant's RFC or

ability to work.   Dr. May's opinion that plaintiff may have difficulty with employment that involves significant exertion and ambulation is in essence a determination of plaintiff's RFC and ability to work, which are issues for the ALJ to decide.   As a result, the ALJ did not err by giving only some weight to Dr. May's opinion regarding employment.

### 3.    *Dr. Blackmon's Opinion*

Finally, plaintiff argues the ALJ erred by giving too much weight to the opinion of Dr. Blackmon, a state agency medical consultant, who was a non-examining, reviewing physician.   (Doc. 10 at 11-14).   The ALJ stated he considered the administrative findings of fact made by Dr. Blackmon and "weighed these opinions as statements from non-examining expert sources." (Tr. 19).   The ALJ noted that the "[RFC] conclusions reached by the medical and/or psychological consultants employed by the State Disability Determination Services supported a finding of 'not disabled'" and he found that those opinions deserve "some weight." (*Id.*).   Additionally, the ALJ stated:

> [Dr. Blackmon] opined the claimant could perform medium work in lifting 50 pounds occasionally and 25 pounds frequently.   The undersigned after review of additional medical records and the testimony of claimant, reduced the exertional limitation to light and unskilled jobs.   Otherwise, the undersigned adopts the remaining functional limitations, as they are consistent with the record as a whole and the [RFC] above.   As such, the undersigned assigns the opinions of the state agency consultants appropriate weight, insofar as they are

consistent with the evidence of record as a whole and support a finding
that the claimant is not disabled.

(*Id*.).

Plaintiff argues the portion of the consultants' opinions the ALJ relied upon
regarding plaintiff's RFC was an assessment by Brooke Bishop, a single
decision-maker (SDM) and, therefore, it is not entitled to any evidentiary weight.
(Doc. 10 at 12-13).  "A SDM is not a medical professional of any stripe, and a finding
from such an individual is entitled to no weight as a medical opinion, or to
consideration as evidence from other non-medical sources."  *Foxx v. Astrue*, 2009
WL 2899048, *7 (S.D.Ala. Sept. 3, 2009) (quotation and alteration omitted); Program
Operations Manual System DI 24510.050 Completion of the Physical RFC
Assessment Form, August 8, 2015 ("SDM-completed forms are not opinion evidence
at the appeal levels.") (available at https://secure.ssa.gov/apps10/poms.nsf/
lnx/0424510050).  *See Pitman v. Astrue*, 2012 WL 2476418, *3 (N.D.Ala. June 22,
2012) ("[T]he district courts within this Circuit have uniformly held that a [RFC]
assessment from a [SDM] does not constitute substantial evidence to support an
ALJ's decision.").

Indeed, Ms. Bishop, rather than Dr. Blackmon, signed the RFC sections of the
Disability Determination Explanations (DDE) the ALJ relied upon, which indicates
they are RFC assessments by a SDM.  (Tr. 19, 76-77, 88-89).  Thus, the RFC

Page 26 of  28

assessment the ALJ relied upon in his decision was a finding by a SDM, which is not entitled to any weight as a medical opinion. Although Dr. Blackmon signed the final section of the DDEs, the Commissioner provides no authority to suggest that Ms. Bishop's RFC assessment became medical opinion evidence by virtue of Dr. Blackmon's signature at the end of the DDEs. (*See* Doc. 11 at 20).

The RFC assessment contained in the DDE is a finding by a SDM, and the ALJ erred by giving it any weight.[8]   Because the ALJ committed reversible error by not giving a reason to reject elements of Dr. Kendrick's opinion, the undersigned need not and does not address whether the ALJ's reliance on the SDM's RFC assessment was harmless error. On remand, the ALJ should not give any weight to the SDM's assessment of plaintiff's RFC.

---

[8] Additionally, the findings in the RFC assessment that plaintiff could stand or walk six hours in an-eight hour day and frequently stoop and crouch (*see* Tr. 26-77, 88-89), are contrary to Dr. May's opinion that plaintiff may have difficulties with forms of employment that involve significant ambulation and bending. (Tr. 445). Thus, they would only be only entitled to little weight even if the RFC assessment was a medical opinion of Dr. Blackmon. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988) ("The opinions of non-examining, reviewing physicians, when contrary to those of examining physicians, are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence.") (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (internal alteration omitted)).

## VI.     Conclusion

The ALJ committed reversible error by failing to state any reason for not giving weight to elements of Dr. Kendrick's opinion.[9] Therefore, the Commissioner's decision will be VACATED and the matter REMANDED for further proceedings consistent with this Opinion.  A separate order will be entered.

DONE this 22nd day of February, 2017.

_____
HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

---

[9] In light of the court's decision to remand this action based on the ALJ's failure to state a reason for not giving weight to all of Dr. Kendrick's opinion, the court does not reach plaintiff's argument that the ALJ's assessment of her RFC was not based on substantial evidence.